UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CELTIC MARINE CORPORATION | CIVIL ACTION |
| versus | NO. 2:11-cv-3005 |
| JAMES C. JUSTICE COMPANIES, INC. | SECTION ___ |
| | MAGISTRATE ___ |

## **COMPLAINT**

NOW INTO COURT comes Celtic Marine Corporation, who files this Complaint against James C. Justice Companies, Inc., and avers as follows:

1.

Celtic Marine Corporation ("Celtic Marine") is a Louisiana corporation with its principal place of business in Baton Rouge, Louisiana.

2.

James C. Justice Companies, Inc. ("Justice") is a Delaware corporation with its principal place of business in Gable, South Carolina, and which is not registered to do business in the state of Louisiana, but is doing business in the state of Louisiana.

3.

Subject matter jurisdiction is proper in this court because the matter concerns issues of general maritime law, as provided in 28 U.S.C. § 1333, and also because the parties are citizens

of different states, and the amount in controversy is greater than $75,000, thereby satisfying the requirements of 28 U.S.C. § 1332.

4.

Personal jurisdiction over Justice is proper in this court because Justice entered into guarantor's agreements on maritime contracts with Celtic Marine, a Louisiana corporation, and guaranteed the performance of those underlying maritime contracts in Louisiana, and because the underlying maritime contracts guaranteed by Justice, and to whose terms and conditions Justice agreed, contain jurisdiction clauses in which the buyer, and thereby Justice by virtue of agreeing to the terms of the contracts, agreed to subject itself to personal jurisdiction in the federal and state courts of Louisiana for any claims or disputes arising under the contracts.

5.

Venue is proper in the Eastern District of Louisiana because the underlying maritime contract guaranteed by Justice, and to whose terms and conditions Justice agreed, contain venue provisions designating the federal courts in Louisiana as the proper venue for any claim and dispute arising under, in connection with, or incidental to the contracts, because part of the performance of the underlying maritime contract is to take place in New Orleans, Louisiana, and because part of the cargo is currently located in St. James Parish, Louisiana.

6.

In February 2011, Kentucky Fuel Corporation ("KFC") entered into a contract with Celtic Marine entitled "Service Agreement," numbered 0216 (hereinafter "Spot Contract"), pursuant to which Celtic Marine agreed to arrange for the transportation of approximately 80,000 short tons of metallurgical coal on approximately 48 barges from Big Sandy, Kentucky, Maysville, Kentucky, and Ceredo, Kentucky to New Orleans, Louisiana, from April 25, 2011

through May 16, 2011, on behalf of KFC, and KFC agreed to pay Celtic Marine for the services provided by Celtic Marine.

7.

Justice executed a Guarantor's Agreement for the Spot Contract on February 18, 2011, in which Justice agreed to guarantee all obligations to Celtic Marine under the Spot Contract, including payment of all sums due to Celtic Marine under the Spot Contract and fulfillment of all other obligations, financial or otherwise, set forth in the Spot Contract.

8.

In April 2011, KFC entered into another contract with Celtic Marine entitled "2011 Annual Service Agreement," numbered 11-0148 (hereinafter "Service Agreement"), pursuant to which Celtic Marine agreed to arrange for the transportation of approximately 1,050,000 short tons of metallurgical coal on approximately 650 barges from Big Sandy, Kentucky, Docks Creek, and Ceredo, West Virginia to New Orleans and Darrow, Louisiana, from June 2011 through December 2011, on behalf of KFC, and KFC agreed to pay Celtic Marine for the services provided by Celtic Marine.

9.

Pursuant to the Service Agreement, KFC agreed to pay additional costs for barge freight if it failed to ship, on average, a minimum of seventy barges per month. KFC also agreed to pay additional costs for stevedoring if it failed to ship a minimum of 300,000 short tons of coal bimonthly. Specifically, the Service Agreement states as follows:

> SPECIAL PROVISIONS: Kentucky Fuel Corporation to ship a minimum of 500 barges and average of 70 barges per month for this contract term. If 70 barges are not shipped, liquidated damages of $5.50 will be assessed per short ton for each deficit barge (1500 tons) reconciled per monthly basis and payable net 15 days before next set of barges load.

SHORTFALL: $0.50 cents per short ton for tons not shipped under 1,050,000 ST and reconciled for tons not shipped less than...300,000 ST bimonthly and payable net 15 days.

10.

Justice executed a Guarantor's Agreement for the Service Agreement on April 4, 2011, in which Justice agreed to guarantee all obligations to Celtic Marine under the Service Agreement, including payment of all sums due to Celtic Marine under the Service Agreement and fulfillment of all other obligations, financial or otherwise, set forth in the Service Agreement.

11.

Pursuant to the Service Agreement and Spot Contract, Celtic Marine arranged and hired the services of two separate barge operators, American Commercial Lines, L.L.C. ("ACL") and Heartland Barge Management ("HBM"), for the transportation of KFC's cargo of metallurgical coal to be loaded on approximately 46 barges operated by ACL and 2 barges operated by HBM.

12.

Loading of the barges under the Spot Contract and Service Agreement commenced on May 5, 2011 and finished on September 12, 2011. The barges were transported by ACL and HBM to Louisiana, pursuant to the Spot Contract and Service Agreement, and arrived in Louisiana from June 13, 2011 through October 29, 2011.

13.

Since that time, and as of this date, the barges have remained in Louisiana waiting for KFC to unload its cargo. While the barges remain loaded with KFC's cargo, demurrage charges of approximately $300 per barge per day continue to accrue, for a total of approximately $11,000 per day.

14.

The Service Agreement and Spot Contract require that KFC pay Celtic Marine demurrage for any delay beyond the free days to which the parties agreed. Specifically, the Spot Contract provides that KFC will be charged $295 per day, with demurrage to be invoiced upon complete loading of the vessel at New Orleans and payment due three (3) days after the invoice to KFC. The Service Agreement provides that KFC pay $300 per day, with demurrage to be invoiced upon complete loading of the vessel at New Orleans and payment due three (3) days after the invoice to KFC.

15.

The Service Agreement and Spot Contract further provide, in pertinent part:

> PAYMENT OF FREIGHT: When the barge initially starts on its voyage, the entire amount of the freight charge shall become earned and due and payable to [Celtic Marine] in cash or check or wire transfer without discount, cargo lost or not lost, damaged or not damaged, in whole or in part, at any stage of the voyage. [Celtic Marine] will have a lien upon all cargo for any amount due hereunder, including demurrage, which lien will survive delivery of the cargo. [Celtic Marine] also will have a lien on all freights or subfreights owed to [KFC] by the cargo owner or consignee, for any amount due hereunder, including demurrage. All freight, demurrage and other charges shall be subject to an interest charge of 1-1/2% per month beginning on the first day after the due date of invoice. [KFC] also shall pay all reasonable costs and attorney fees incurred by [Celtic Marine] for the collection of all charges due and payable to [Celtic Marine] under this Contract.

16.

Subsequent to KFC's acceptance of the Service Agreement, KFC failed to honor its contractual obligations by failing to provide the agreed upon rate of 1,050,000 short tons of coal and 70 barges per month as per the Service Agreement. Further, KFC failed to provide payment to Celtic Marine for freight, shortfall, demurrage, and other costs, as required by the Service

Agreement. KFC also failed to provide payment of demurrage and other costs to Celtic Marine for the services Celtic Marine rendered pursuant to the Spot Contract. As of this date, KFC and, by operation of the Guarantor's Agreements, Justice owe Celtic Marine approximately $4,581,487.56 in past due freight, shortfall, liquidated damages, demurrage, and other costs under both the Service Agreement and Spot Contract.

17.

Despite repeated amicable demand, KFC has refused to honor its contractual indebtedness to Plaintiff and, as a result, Celtic Marine has made demand upon Justice to honor its Guarantor's Agreements. To date, Justice has not honored its obligations to Celtic Marine as guarantor of the full terms and conditions of the Service Agreement and Spot Contract, thereby necessitating the filing of this Complaint.

18.

Justice's guarantee of all of KFC's obligations under the Service Agreement and Spot Contract renders it liable to Celtic Marine for all outstanding amounts owed to Celtic Marine by KFC under the Service Agreement and Spot Contract, including but not limited to past due freight, shortfall, liquidated damages, demurrage, and other costs.

19.

Celtic Marine requests and is entitled to a trial by jury in this matter.

WHEREFORE, plaintiff, Celtic Marine Corporation, prays that its Complaint be deemed good and sufficient, that judgment be granted in its favor, and against James C. Justice Companies, Inc., in the amount of its claim and any additional amounts owed, including but not limited to, attorney's fees, costs, expenses, and pre-judgment interest for Celtic Marine

Corporation's damages, and for all just and equitable relief to which Celtic Marine Corporation may be entitled by contract or law.

Respectfully submitted,

PATRICIA A. KREBS, T.A. (#2035)
MEGAN C. MISKO (#29803)
KING, KREBS & JURGENS, P.L.L.C.
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233

Attorneys for Plaintiff, Celtic Marine Corporation

**PLEASE WITHHOLD ISSUANCE OF SUMMONS AND**
**SERVICE OF PROCESS UNTIL FURTHER FILINGS**
**REQUESTING ISSUANCE OF SUMMONS FOR SERVICE OF PROCESS**