UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CELTIC MARINE CORPORATION | CIVIL ACTION |
| VERSUS | NO: 11-3005 |
| JAMES C. JUSTICE COMPANIES, INC. | SECTION: "J"(2) |

## ORDER AND REASONS

Before the Court is Plaintiff Celtic Marine Corporation ("Celtic Marine")'s **Motion for Entry of Judgment (Rec. Doc. 68)**, Defendant James C. Justice Companies, Inc. ("Justice Co.")'s opposition thereto (Rec. Doc. 93), and Plaintiff's reply and Defendant's surreply to the same (Rec. Docs. 94, 98). Plaintiff's motion was set for submission on August 14, 2013, on the briefs. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, now finds that Plaintiff's motion should be **GRANTED in part and DENIED in part** for the reasons set forth more fully below.

1

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This action arises out of a maritime contract dispute. On December 7, 2011, Plaintiff Celtic Marine filed suit against Justice Co. for breach of Guarantor's Agreements. Specifically, Celtic Marine alleges that Justice Co. guaranteed all obligations owed to it by Kentucky Fuels Corporation ("KFC"). Celtic Marine asserts that KFC failed to fulfill its obligations under a 2011 Service Agreement and a 2011 Spot Contract and, therefore, by virtue of the Guarantor's Agreements, Justice Co. is responsible for past due freight, shortfall and liquidated damages, demurrage, and other costs owed to Celtic Marine.

On January 27, 2012, the parties advised this Court that they had reached a settlement agreement. Therefore, on February 7, 2012, the Court issued an order of dismissal, allowing the parties to seek enforcement of the compromise upon a showing of good cause if the compromise was not consummated within 120 days. Under the terms of the February 1, 2012 Settlement Agreement ("February Settlement Agreement"): (a) Justice Co. agreed to pay a sum of $ 4,687,215.00, (b) KFC agreed to pay Celtic Marine for all demurrage incurred while KFC's cargo remained on Celtic Marine's barges for transport, and (c) KFC entered into a 2012 Annual Service Agreement with Celtic Marine. Justice Co.

2

guaranteed all accruing demurrage payments as well as KFC's obligations under the 2012 Service Agreement. The terms of this agreement stated that, upon receipt of all sums listed above, and upon receipt of the executed 2012 Annual Service Agreement, Celtic Marine would release Justice Co. and KFC from all claims brought in or relating to the present litigation. Additionally, in connection with the movement of KFC's cargo, KFC and Celtic Marine also entered into a 2012 Spot Contract. Justice Co. guaranteed the 2012 Spot Contract as well.

On May 24, 2012, Celtic Marine requested that the Court extend its deadlines to enforce the settlement. In its request, Celtic Marine explained to the Court that from the date of the settlement until the date of filing, KFC's cargo had remained on the barges incurring demurrage charges which remained unpaid. Celtic Marine explained that because the charges remained unpaid, and because it would take time to unload the cargo from Celtic Marine's barges, it was seeking an extension of the enforcement deadline. The Court granted Celtic Marine's request on May 30, 2012, extending the deadline to enforce the settlement an additional 120 days until October 4, 2012.

On October 1, 2012, Celtic Marine again requested that the Court extend the deadline to enforce the settlement. In its

3

motion, Celtic Marine explained that the parties had reached a new, tentative agreement for the payment of outstanding demurrage and other costs. It also explained  that KFC's cargo was still in the process of being unloaded. Therefore, Celtic Marine requested additional time to ensure that the agreement was paid in full. The Court granted Celtic Marine's request and extended the deadline for the parties to seek enforcement of the settlement by an additional 100 days until January 12, 2013. Under the terms of the October 1, 2012 Settlement Agreement ("October Settlement Agreement"), Justice Co. and KFC agreed to pay Celtic Marine a total sum of $2,200,00.00 divided into four installment payments. The installment payments were to be made in one installment of $1,925,000.00 and three installments of $91,666.66. The first payment was to be paid upon execution of the October Settlement Agreement, and the remaining three were to be paid on October 12, 2012, November 1, 2012, and December 3, 2012. The October Settlement Agreement provided a full release from the February Settlement Agreement in the event that all installments were paid in full and on time. The October Settlement Agreement also professed to "embod[y] the entire understanding and agreement of the parties." Pl.'s Mot. for Summ. J., Exh. 15, Rec. Doc. 20-3, p. 60 ¶ 13. As part of the October

4

Settlement Agreement, Justice Co. and KFC also executed Guaranties in consideration for the agreement. The Guaranties were incorporated into the agreement as attachments. They specifically govern the settlement payments and provide for prompt payment and performance of the October Settlement Agreement.

The record shows that Justice Co. paid the full amount of $2.2 million, but did not follow the installment schedule contemplated in the October Settlement Agreement. Pl.'s Motion for Sum. Judg., Rec. Doc. 20-3, Exh. 16, pp. 68-70 Instead, Justice Co. tendered payments of $1,000,000 on October 26, 2012, $1,108,333.34 on November 12, 2012, and $91,666.66 on January 10, 2013.

On January 11, 2013, Celtic Marine filed a motion to reopen litigation and a motion for summary judgment. The Court granted the motions, finding that, under the express terms of the October Settlement Agreement, Justice Co.'s failure to make timely installment payments gave Celtic Marine the right to invoke the acceleration clause in the October Settlement Agreement, allowing Celtic Marine to demand the remaining amount owed under the February Settlement Agreement. (Rec. Doc. 46). The Court also determined that it was in the interest of justice to reopen the

5

case to (1) enforce the settlement agreement, (2) allow Celtic Marine to assert new claims that arose as a result of the breach of the settlement agreement, but still arising from the original Complaint, and (3) to determine the sum owed under the February Settlement Agreement. The Court noted that, though it was clear that the October Settlement Agreement was breached, which allows Celtic Marine to demand amounts owed under the February Settlement Agreement, it was unclear what amount was owed under the February Settlement Agreement and that reopening the matter was the best way to determine the amount owed.

Justice Co. filed a motion for reconsideration that was denied on May 30, 2013. (Rec. Docs 53, 67) On the same day, Celtic Marine filed the instant motion for entry of judgment, which was originally set for hearing on June 19, 2013 (Rec. Doc. 68-3). Following a contested motion to continue the hearing date, filed by Justice Co., the Court continued the submission date to August 14, 2013. Justice Co. filed its opposition memorandum on August 13, 2013 and Celtic Marine filed its reply memorandum on August 15, 2013. Pursuant to the Court's order (Rec. Doc. 101), Celtic Marine filed an amended interest calculation on September 16, 2013. (Rec. Doc. 102)

## PARTIES' ARGUMENTS

Celtic Marine moves the Court for an entry of judgment, pursuant to Federal Rules of Civil Procedure 54 and 58, as well as pursuant to the Court's order granting summary judgment. Celtic Marine contends that KFC owes $7,156,787.27, which calculation includes:

> 1) all demurrage incurred since the execution of the February Settlement Agreement, 2) the amount by which Celtic Marine discounted the totals owed by KFC and Justice in reaching the February Settlement Agreement, 3) freight charges for the movement of cargo ordered by KFC, 4) shortfall and liquidated damages owed as a result of KFC's failure to ship any new cargo under the 2012 Service Agreement, 5) cover handling, barge cleaning, and other miscellaneous charges incurred for the barges on which KFC's cargo has been loaded, 6) and interest on the unpaid shortfall and liquidated damages.

Pl.'s Mot. Entry of Jmt., Rec. Doc. 68-1, p. 10. Subtracting the amounts that Justice already paid under the October Settlement Agreement, Celtic Marine contends that the amount due, as of April 30, 2013, is $4,956,787.27, plus attorney's fees in the amount of $26,546.82; however, Celtic avers that this amount may change once all cargo is unloaded and the sum owed can be finalized. Celtic Marine contends that Justice guaranteed the entirety of this amount, and therefore should be ordered to pay Celtic Marine.

Justice Co. contends that Celtic Marine's motion is really one for summary judgment as to quantum. Moreover, Justice Co. disputes several of Celtic Marine's calculations; but, as Celtic Marine indicates in its reply, Justice Co. does not offer an accounting of what it believes is owed.  In its surreply, Justice Co. argues that it need not provide an exact accounting because there are several issues of material fact that cannot be resolved in a brief, but rather must be resolved by a jury. The parties' arguments as to the specific amounts owed are set out below.

**A. Demurrage**

Celtic Marine contends that the February Settlement Agreement bound KFC, and its guarantor, Justice Co., to pay all demurrage incurred while KFC's cargo remains on barges arranged for by Celtic Marine. Celtic Marine contends that demurrage has accrued, and continues to accrue, at a rate of $300 per day, per barge. Celtic Marine avers that it sent invoices to Justice Co. and KFC from the time of the February Settlement Agreement until July 31, 2012, but that it stopped sending invoices "in an effort to resolve the ongoing dispute." Rec. Doc. 68-1. p. 3. Prior to July 31, 2012, Celtic Marine calculates that it was owed

$1,025,700.00 in demurrage, and that after July 31, 2012[1], another $672,600 in demurrage was accrued, for a total of $1,698,300 in demurrage as of May 17, 2013.

Justice Co. does not dispute that cargo remains on the barge, but it does disputes whether Justice Co. should have to pay demurrage at this time. Justice Co. asserts that the delay in unloading the cargo is at least partially attributable to water damage to the barges that is currently the subject matter of lawsuit by KFC against Celtic Marine that is pending in the Eastern District of Kentucky.[2] Justice Co. maintains that this creates an issue of material fact as to whether KFC owes demurrage, and if so, in what amount.

In its reply, Celtic Marine clarifies that it only owed $672,600. Celtic Marine states that the payments made on the October Settlement agreement were applied to the demurrage incurred prior to July 31, 2012; therefore, Celtic Marine does not demand the full $1,698,300.00, but rather only $672,600 in demurrage. Celtic Marine further argues that Justice Co.'s argument that it is only required to pay "net losses," meaning

---

[1] Celtic Marine states that, though they did not send invoices after this date, they continued to track the amounts owed in the event that Justice Co. and KFC did not comply with the February Settlement Agreement.

[2] KFC filed suit against Celtic Marine in the Eastern District of Kentucky on March 5, 2013, civil action 13-0033.

that they must only pay the amounts owed after any possible award of damages in the ongoing negligence suit against Celtic Marine, is incorrect. Celtic Marine notes that (a) Justice Co. and KFC have decided at this late point in litigation to bring up their dissatisfaction with the shipping services for the first time, (b) that Justice Co. and KFC have always promised to pay such costs, and (c) that regardless of any negligence found, KFC and Justice Co. agreed to pay demurrage at a rate of $300 per day per barge as part of the February Settlement Agreement, and that there has been no change to that agreement.

## B. Freight

Celtic Marine asserts that they are owed $965,317.76 in freight charges traceable to KFC's multiple orders to move the cargo. Celtic Marine argues that these charges were invoiced under the 2012 Service Agreement, which was incorporated into the February Settlement Agreement. Celtic Marine further asserts that Justice owes this amount under its Guaranty from January 25, 2012 wherein it agreed to "pay to Celtic Marine all damages, costs, and expenses [...including] but not limited to all sums owed [...] for freight." Rec. Doc, 68-1, p. 5. Justice. Co. does not dispute this calculation.

10

## C. Shortfall and Liquidated Damages

Celtic Marine asserts that they are owed $2,625,000 in shortfall and liquidated damages due to KFC's failure to ship any new coal as required in the 2012 Service Agreement. Celtic Marine states that, as was the case with demurrage, it sent invoices from the time of the February Settlement Agreement until July 31, 2012, but then stopped sending invoices. Celtic Marine asserts that $625,000 of the above amount is owed from before July 31, 2012, and that another $2.0 million in shortfall and damages accrued after Celtic Marine stopped sending invoices on July 31, 2012. Justice. Co. does not dispute this calculation in its opposition to the instant motion.

## D. Cover Handling, Barge Cleaning, and Other Miscellaneous Charges

Celtic Marine asserts that they are owed $848.75 in cover handling, barge cleaning, and other miscellaneous charges from before July 31, 2012 and another $10,544.74 that accrued after July 31, when it stopped invoicing Justice Co. and KFC. Celtic Marine alleges that these charges arise from an incident wherein the cargo became inundated with water, causing damage to the barge and the cargo. Justice Co. disputes this amount for the same reasons that it disputes the demurrage calculations.

11

**E. February Settlement Agreement Discount**

Celtic Marine avers that, in reaching the February Settlement Agreement, it allowed a discount of $1,550,398.00 when it accepted $4,687,215.00 to settle all of its claims against KFC and Justice Co.. Celtic Marine now argues, however, that Justice Co. must pay the discounted amount as a result of its untimely payments under the October Settlement Agreement.

Justice Co. disputes this amount, arguing that Celtic Marine cannot "claw back" the discounted amount. Justice Co. asserts that the October Settlement Agreement contains a "claw back" provision that allows the parties to revert back to the February Agreement if the October Settlement Agreement was breached, but the February Settlement Agreement contains no such clause. Rather, Justice Co. asserts that the February Settlement Agreement only called for the $4,687,215.00 payment and for payment of demurrage, making no mention of allowing Celtic Marine to seek payment on the $1.5 million discount. Moreover, Justice Co. claims that its guaranty only covers the October Settlement Agreement.

In its reply, Celtic Marine argues that even if the February Settlement Agreement does not contain the exact timeliness clause of the October Settlement Agreement, that fact does not relieve

Justice Co. or KFC from its obligation to pay the discounted amount because (a) the Defendant is still bound by the February Settlement Agreement, and (b) the October Settlement Agreement provides for collection of the discounted amount.

Celtic Marine contends that Justice Co. and KFC have not paid all demurrage incurred, thus have not been released from the February Settlement Agreement and amounts owed due to this litigation. Celtic Marine further argues that KFC and Justice's untimely payment on the October Settlement Agreement allows Celtic Marine the right to demand "payment in full for the total amounts owed to it by KFC and Justice under the Settlement Agreement, Service Agreement, Spot Contract No. 1, and Spot Contract No. 2." Pl.'s Reply, Rec. Doc. 94, p. 8 (emphasis omitted). Celtic Marine contends that the $1,550,398.00 reflects the "shortfall owed on three invoices incurred under the 2011 Service Agreement," thus the amount is collectible. Pl.'s Reply, Rec. Doc. 94, p. 8

Finally, Celtic Marine disputes Justice Co.'s contention that it only guaranteed the October Settlement Agreement. Celtic Marine points to the Guaranty that Justice Co. signed in connection with the October Settlement Agreement and argues that the agreement covers "any obligation owed to Celtic Marine" and

13

"all of Kentucky Fuel Corporation's contractual obligations and liabilities to Celtic Marine." Pl.'s Reply, Rec. Doc. 94, p. 9 (emphasis omitted). Celtic Marine argues that there is no language limiting the Guaranty to the October Settlement Agreement.

In its surreply, Justice Co. argues that its Guaranty only obligates Justice Co. to pay Celtic Marine for the damages incurred as a result of the breach. Justice Co. further argues that a breach of the October Settlement Agreement only permits Celtic Marine to enforce the February Settlement Agreement, the 2012 Service Agreement, the Spot Contract No. 1, and Spot Contract No. 2. Accordingly, the "discount" that Celtic Marine claims it is owed is not recoverable because it arises from the 2011 Service Agreement, which is not included in the foregoing list. Justice Co. asserts that it has paid everything under the February Settlement Agreement except for the continuing demurrage, thus once that is paid, the terms of the February Settlement Agreement are satisfied and Justice Co. should be released.

**F. Interest**

Celtic Marine contends that Justice Co. owes interest on certain sums owed at a rate of 1.5% per month, as was agreed upon

in their contracts, even though interest is generally restricted to less than 12% per annum. Celtic Marine contends that Louisiana Civil Code Article 2924 and Louisiana Revised Statute § 9:3500 create an exception to the general rule when "deferring payments of an obligation for commercial or business purposes." La. R.S. § 9:3500(D); La. Civ. Code. Art. 2924(d); see <u>Jefferson Door Co., Inc. v. Lewis</u>, 98-26 (La. App. 5 Cir. 5/27/98) 713 So.2d 835. Using the 1.5% per month interest rate, Celtic Marine alleges that it is owed interest on the unpaid shortfall and liquidated damages accrued under the 2012 Service Agreement in the amount of $308,378.02, as of May 17, 2013.

Justice. Co. argues that the interest is not calculated correctly because Celtic Marine charged interest on sums before they accrued and on non-invoiced sums. Moreover, Justice Co. argues that Celtic Marine is not entitled to interest on sums deemed paid as part of the October Settlement Agreement. Justice Co. argues that any amount paid must go towards interest bearing debts, pursuant to Louisiana Civil Code Article 1868, and that the amounts it paid should cover this amount.

Celtic Marine argues in its reply memorandum that the fact that it stopped sending invoices after July 31, 2012 has no bearing on the calculation of interest. Celtic Marine re-asserts

15

that it stopped sending invoices to facilitate settlement negotiations, but that the damages and interest continued to accrue and are now due as a result of Justice Co. and KFC's failure to abide by the October Settlement Agreement. As to Justice Co's argument regarding advance interest, Celtic Marine argues that it was proper to calculate interest that would be owed under the 2012 Service Agreement once KFC and Justice Co. informed Celtic that it would not ship anything under the agreement.

Celtic Marine submits that calculating interest on the shortfall damages as each invoice would have become due, as is suggested by Justice Co, would (a) be improper, and (b) result in more interest being due that is due under Justice Co,'s one-time interest calculation. Celtic Marine further contends that *all* of the amounts owed--including freight, shortfall, demurrage, or cleaning costs--incur interest at the same rate. Because Justice and KFC did not specify which debts their payments were intended to satisfy, Celtic Marine applied payments received to the oldest invoices, which it argues is proper under Louisiana Civil Code Article 1868 and is in accordance with Justice Co.'s argument that payments must be applied to interest bearing debt first.

To counter Justice Co.'s argument that the 1.5% interest

16

rate is illegal, Celtic Marine refers the Court to its reply memorandum submitted in connection with its motion for summary judgment wherein it made the same argument. Pl.'s Reply in Support of MSJ, Rec. Doc. 38, p. 9-10. In that memorandum, which is repeated in Celtic Marine's instant motion, Celtic Marine contended that Louisiana Civile Code Article 2924 and Louisiana Revised Statute § 9:3500 create an exception to the general rule regarding interest rates when the transaction is commercial in nature, as is the current transaction.

Finally, Justice Co. argues in its surreply that all contracts between the parties indicated that interest would due after the invoice, thus when Celtic Marine decided to stop invoicing Justice Co. and KFC, they could no longer charge interest at the 1.5% rate. Moreover, Justice Co. contends that any interest that has accrued has only done so until October 2012, not May 2013 as Celtic argues it does, because the October Settlement Agreement encompassed those interest payments. Justice Co. avers that Celtic Marine misconstrues Louisiana Civil Code Article 1868 because the article never says that payments must be applied to the oldest debt, but rather to the most burdensome debt. Justice Co. urges that, under Article 1868, Celtic Marine was required to apply payment to any debts bearing interest

17

first. Justice Co. further contends that, beyond invoiced sums, prejudgment interest, if awarded, and postjudgment interest, should be awarded at the current federal rate rather than the 1.5% conventional rate.

## G. Attorney's Fees

Celtic Marine asserts that it is owed $26,546.82 in attorney's fees. Justice Co. disputes this amount, alleging that Celtic Marine includes charges that do not arise from enforcement of the October Settlement Agreement. Celtic Marine opposes this argument in its reply memorandum, noting that it has only included fees associated with the enforcement of both settlement agreements and the Guaranties executed by Justice, all of which include clauses requiring the payment of attorney's fees when a party must seek legal action to enforce the agreement.

DISCUSSION

## A. Undisputed Amounts

The amounts that Celtic Marine asserts that it is owed for freight charges and for shortfall and liquidated damages are undisputed by Justice Co., thus must be awarded to Celtic Marine. These amounts are: (a) $965,317.76 in freight charges traceable to KFC's multiple orders to move the cargo, and (b) $2,625,000 in shortfall and liquidated damages due to KFC's failure to ship any

18

new coal as required in the 2012 Service Agreement.

**B. Disputed Amounts**

The following issues are disputed: (1) the amount of demurrage owed, (2) the amount owed for barge cleaning and cover charges, (3) whether Justice Co. owes the amount discounted during the negotiation of the February Settlement Agreement, and (4) the amount of interest owed. These issues present substantive questions that the Court cannot entirely resolve in the instant motion for entry of judgment wherein the focus of the motion and its accompanying briefs was concentrated on the dollar amount owed, and not whether the amount is owed as a matter of law. Therefore, the Court must deny Celtic Marine's request for entry of judgment as it relates to demurrage, cover charges, barge cleaning, interest, and the February Settlement Agreement Discount for the reason more fully discussed below. Upon further litigation and briefing, either party is free to re-urge these issues at a later time in the instant proceeding.

**1. Demurrage/Barge Cleaning and Cover Charges**

The parties do not dispute that a sum is owed, but they do dispute how much is owed and when it is owed in light of pending litigation in the Eastern District of Kentucky wherein KFC alleges that the cargo at issue in this proceeding was damaged

due to Celtic Marine's negligence. Thus, the main issue before the Court is whether the possibility of a finding of negligence should temporarily relieve Justice Co.'s obligation to pay demurrage, cover charges, and barge cleaning fees to Celtic Marine. The Court finds that this is a substantive question of law that is not amenable to resolution in the instant motion for entry of judgment, which focuses on the amount owed under existing contracts, not on whether anything is owed at all. Thus, Celtic Marine's motion must be denied as to its claims for demurrage and barge cleaning fees.

**2. February Discount Amount**

In its Order and Reasons dated March 26, 2013, the Court determined that Justice Co. breached the October Settlement Agreement, thereby triggering the Agreement's acceleration clause. This acceleration clause expressly provides that, in the event of an untimely payment, Celtic Marine has the right to demand

> payment in full for the total amounts owed to it by KFC and Justice under the Settlement Agreement, Service Agreement, Spot Contract No. 1, and Spot Contract No. 2, as of the date of that particular late installment was due (collectively, the "Settlement/Service/Spot Balance") and unpaid. For the avoidance of doubt, if, and only if, all installments set forth in Section 1 are paid in full and in a timely manner, the full and irrevocable payments shall supersede, satisfy,

> release and discharge the Settlement/Service/Spot
> Balance in its entirety.

October Settlement Agreement, Exh. to Pl's Reply, Rec. Doc. 94-1 p. 100.

The Court is inclined to decide that, by virtue of the fact that Celtic Marine seeks enforcement of the February Settlement Agreement, it is not allowed to reach beyond the February Settlement Agreement. However, the parties dispute the proper interpretation of the acceleration clause; and, finding that both parties presented plausible interpretations, the Court defers ruling on this issue until such time that the parties submit a substantive motion and fully brief their positions. Thus, Celtic Marine's motion must be denied as to its claim for this discounted amount.

### 3. Interest

Initially, it must be noted that the Court finds that the 1.5% interest rate is an appropriate rate and that Celtic Marine properly imputed payments received by Justice Co.. Louisiana's prohibition of interest rates which exceed 12% per annum does not apply to business and/or commercial transactions, as stated in Louisiana Revised Statute § 9:3500. As there is no evidence that this anything but a commercial transaction, the Court finds that the parties were free to contract for an interest rate in excess

of 12% per annum.

    As to the imputation of payment, without further designation by Justice Co., Celtic Marine had to apply payments to the debts that came due first under Louisiana Civil Code Article 1868. Though Justice Co. takes issue with Celtic Marine's phrasing, the Court finds that the codal provision "debts that became due first" is synonymous with "the oldest debt" in this instance. Justice Co. errs in urging the Court to impute payments to the debts that bear interest, because "all freight, demurrage, and other charges shall be subject to an interest charge of 1-1/2% per month beginning on the first day after the due date of invoice." Rec. Doc. 93-1, Exh. F, p. 35. Because Justice Co. has "the same interest in paying all the debts, payment must be imputed to the debt that became due first." La. Civ. Code. Art. 1868. As it appears that Celtic Marine did just that, the Court finds no error in Celtic Marine's imputation of payment.

    The Court finds, however, that (a) Justice Co.'s contention that the 1.5% interest rate may only be applied to invoiced sums, as per the terms of the contracts,[3] and (b) the issue of whether

---

[3] Invoices sent by Celtic Marine to KFC contained the statement that "invoices not paid within the stated terms will be charged 1.5% per month." Rec. Doc. 93-1, Exh. G, p. 35. The 2012 Service Agreement states that "all freight, demurrage, and other charges shall be subject to an interest charge of 1-1/2% per month beginning on the first day after the due date of invoice." Rec. Doc. 93-1, Exh. F, p. 35.

interest must be calculated through October 2012 rather than May 2013 merit further attention and cannot be resolved in the instant motion. Thus, despite the Court's determination that Justice Co. owes some interest, the Court was not able to accept the interest calculation included by Celtic Marine in the instant motion. As such, and in an attempt to fashion the most complete relief possible, the Court ordered Celtic Marine to submit a new calculation of interest which would encompass only the amounts that the Court can definitively determine are due at this time.[4]

Celtic Marine submitted their calculation on September 16, 2013. After considering the calculations provided, the Court will award interest in the amount of $296,209.10, which amount represents the interest owed invoiced shortfall amounts through October 1, 2012 at a rate of 1.5% per month.[5] Upon further litigation and briefing, either party is free to re-urge the issue of interest as to any sums not included in the aforementioned amount.

---

[4] Celtic Marine was ordered to calculate interest on all invoiced sums at the contracted for interest rate (1.5%) through October 2012.

[5] In its recalculation of the interest owed, Celtic Marine included interest calculations on all overdue sums rather than a calculation of interest on shortfall. However, because Celtic Marine only requested entry of judgment as to interest on shortfall in its initial motion, and because the Court's order to recalculate interest was not intended to expand the reach of the instant motion, the Court declines to include interest calculations traceable to any debts other than shortfall.

**C.   Attorney's Fees**

The Court agrees with Celtic Marine's argument that it only seeks payment for enforcement of the parties' agreements and that every agreement signed by Justice Co. contemplates the payment of attorney's fees.  Therefore, finding that the amount requested is reasonable, the Court will enter a judgment awarding Celtic Marine attorney's fees in the amount of $26,546.82.

Accordingly,

Celtic Marine Corporation's **Motion for Entry of Judgment (Rec. Doc. 68)** is **GRANTED in part and DENIED in part**. The Court will enter a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) in the amount of $3,913,073.68, which sum represents amounts owed for shortfall and liquidated damages, freight charges, interest on invoiced shortfall through October 1, 2012, and attorney's fees.  Any sums claimed to be owed that are not included in the subsequent partial final judgment, such as sums owed under the October Settlement Agreement's acceleration clause, or sums owed for demurrage, cover charges, barge cleaning, and interest, will be treated upon further motion of the parties. The court further finds, and will include in its judgment, that Celtic Marine is entitled to legal interest on the award from the date of entry of judgment, as well as costs

24

associated with this litigation.

     New Orleans, Louisiana, this 18th day of September, 2013.




                              _____
                              CARL J. BARBIER
                              UNITED STATES DISTRICT JUDGE