```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


CELTIC MARINE CORPORATION                    CIVIL ACTION

VERSUS                                       NO: 11-3005

JAMES C. JUSTICE COMPANIES,                  SECTION: "J"(2)
INC.
```

### ORDER & REASONS

Before the Court is Celtic Marine Corporation ("Celtic")'s **Motion for Summary Judgment and Certification as Final Judgment (Rec. Doc. 152)**, James C. Justice Companies, Inc. ("Justice")'s opposition to the motion (Rec. Doc. 155), Celtic's reply memorandum (Rec. Doc. 160), and KFC's sur-reply memorandum. (Rec. Doc. 173) The motion was set for hearing on May 7, 2014, on the briefs. Also before the Court, on an expedited basis, is Celtic's Motion to Strike Memorandum in Opposition (Rec. Doc. 158) and KFC's opposition thereto. (Rec. Doc. 170) Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the motion for summary judgment should be **GRANTED IN PART** and **DENIED IN PART** and that the motion to strike should be **DENIED AS MOOT** for the reasons set forth more fully below.

### FACTS AND PROCEDURAL BACKGROUND

This litigation commenced when Celtic filed suit against Justice for breach of contract in 2011. The matter was resolved in February 2012 via a settlement agreement (the "FSA"). ( Rec. Doc. 9) Then, in October 2012, another settlement agreement was

confected (the "OSA"). In January 2013, alleging that Justice had breached the settlements, Celtic successfully moved the Court to re-open the matter to enforce the settlement agreements. (Rec. Docs. 11, 46) Once the Court re-opened litigation, Celtic filed a motion for entry of judgment wherein it demanded certain sums that can divided into seven categories: demurrage, freight, shortfall, cover and cleaning charges, the "February discount," interest on past due invoices, and attorney's fees. In a prior partial final judgment, dated March 6, 2014, the Court entered a partial final judgment against Justice that resolved entirely the issues of freight and shortfall damages and partially resolved the issues of interest and attorney's fees. The Court did not enter a judgment for demurrage, the February discount, interest incurred on or after October 1, 2013, and further attorney's fees. Those remaining issues are the subject of the instant motion for summary judgment.[1]

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

---

[1] The Court is well-acquainted with the facts of this matter, thus only the pertinent facts are summarized. For a more thorough recitation of the facts, see the Court's Order and Reasons dated September 18, 2013. (Justice Rec. Doc. 104)

When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden

then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## PARTIES' ARGUMENTS AND DISCUSSION

**I. Motion for Summary Judgment**

  **A. Demurrage and Cover/Cleaning Fees**

The Court previously declined to award demurrage and cover/cleaning fees based on Justice's argument that litigation between KFC and Celtic that was pending in a Kentucky court had the potential to reduce the amount of demurrage owed. The KFC litigation is now before this Court, and KFC's claims were recently dismissed pursuant to Celtic's motion for summary judgment. **(Case No. 13-6538, Rec. Doc. 57)** Therefore, there is no longer any potential that the demurrage and cleaning/cover fees may be reduced. Accordingly, the Court will enter judgment against Justice in the amount of $682,554.74, which amount represents the sum that Justice owes Celtic in connection with demurrage charges and cleaning/cover fees.

  **B. February Discount**

When Celtic, Justice, and KFC entered into the FSA, Celtic agreed to accept an amount that was less than the entire amount that KFC owed in order to settle its claims against Justice.

Pursuant to the FSA, Justice and KFC would be released from the litigation when three events took place: (1) Justice paid two installment payments of a certain amount; (2) KFC, guaranteed by Justice, paid all continuing demurrage incurred; and (3) Celtic received the executed 2012 Service Agreement and an executed guaranty in connection thereto. (Rec. Doc. 152-2, p. 58, ¶ 4) Both the first and last requirements have been fulfilled, however neither KFC nor Justice has paid the demurrage incurred. Celtic contends that, because demurrage has not been paid, KFC and Justice have not been released from all claims in connection with this litigation, and that Celtic has the right to claw back the discounted amount from the FSA. Justice, on the other hand, argues that once this Court renders a ruling on demurrage, the last requirement will be satisfied and Justice and KFC will be released pursuant to the FSA. Justice contends that it would be inequitable to allow Celtic to enforce the FSA by seeking demurrage at the same time that it attempts to essentially nullify the FSA and return to the beginning of litigation. Justice further points out that the FSA, unlike the OSA, does not contain a time requirement for performance or give to Celtic the right to claw back the discounted amount. Celtic contends in its reply that demurrage is not only owed in connection with the February Settlement, but also in connection with the Guaranty, thus Celtic is not only seeking to enforce the FSA, but is also seeking to enforce the Guaranty that Justice signed in connection thereto.

In the absence of special provisions governing compromise, general conventional obligations rules apply to compromises. La. Civ. Code. Arts. 1916-17. Upon an obligor's failure to perform an obligation, the obligee may demand performance or he may demand dissolution of the obligation. La. Civ. Code. Arts. 1994 & 2013. Nowhere in the Civil Code, however, is it indicated that an obligee may demand performance *and* dissolution, and common sense would indicate that such an option is neither equitable or workable. In this case, if the Court were to follow the suggestion of Celtic, Justice would be required to uphold both the FSA and the underlying obligations that were purportedly settled by that same agreement. Though the Court recognizes that Justice has failed to perform many obligations and has not acted as a model obligor, it seems inequitable to enforce both the FSA and the underlying obligation.

Further, based on a comparison of the FSA and the OSA, it appears that the parties did not anticipate the result for which Celtic now advocates. The OSA provides that, in the event that Justice did not timely render payment, Celtic had the right to collect payments owed in connection with several of the underlying contracts in this litigation.[2] In contrast, the FSA does not include a time for performance, nor does it include a provision allowing Celtic to revert to the original claims asserted in case

---

[2] Notably, even in this provision, Celtic is not entitled to reach all the way back to the 2011 Service Agreement and 2011 Spot Contract that were supposed to be resolved by the FSA. Rather, a breach of the OSA only allowed Celtic to collect on sums owed on the 2012 Service Agreement, both 2012 Spot Contracts, and the FSA.

of a breach. Based on these differences, it appears that the FSA does not allow Celtic to claw back the "February discount." Accordingly, Celtic's motion will be denied on this issue.

**C. Interest on Past Due Sums**

The Court previously awarded to Celtic all interest accrued on invoiced shortfall under the 2012 Service Agreement at a rate of 1.5% through October 1, 2012. Now, based on a review of Celtic's Exhibit D, it appears that Celtic seeks interest on all invoiced sums between July 2011 and May 2013.

**1. Invoices Under the 2011 Service Agreement and 2011 Spot Contract**

Justice argues that interest is not owed on any invoice stemming from the 2011 Service Agreement or the 2011 Spot Contract. Justice argues that, because the Court found that Celtic cannot "claw back" beyond the FSA to enforce those two contracts, it should not be allowed to collect interest on those invoices because those debts were extinguished and/or "written off." Had Celtic wanted to collect interest, Justice contends that Celtic should have included interest payments in the FSA.

The Court agrees with Justice. By virtue of the Court's determination that the FSA resolves all claims arising from the 2011 Service Agreement and 2011 Spot Contract, it is only logical that interest cannot now be collected on invoiced sums arising from those agreements. Celtic had the opportunity to recoup that interest in February 2012 and chose not to do so. Further, Celtic had the opportunity to include a provision in the FSA that

Justice's breach would permit Celtic to seek sums owed under the 2011 Agreements, and it again chose not to do so. Therefore, because the Court is enforcing the FSA as written, all claims in connection thereto will be considered resolved and Celtic cannot seek interest on those invoices.

**2. Interest on Shortfall Invoices No. 125247, 1206286, 1207235**

Amongst the interest calculations listed in Celtic's Exhibit D are three invoices for shortfall from May, June, and July 2012. Interest on these invoices was already awarded pursuant to this Court's March 6, 2014 judgment; therefore, Celtic may not recover these sums again. Any interest awarded today will therefore reflect the $34,263.50 judgment that was already entered for interest, up to October 1, 2012, on the May, June, and July 2012 shortfall invoices.

**3. Interest on Shortfall Written Off Under the OSA**

Justice argues that interest cannot be awarded on shortfall after the date that the OSA was executed because the invoices were written-off pursuant to the OSA. Justice contends that, even though the OSA contains the provision allowing Celtic to recover on certain contracts if Justice breached the OSA, it did not contemplate that interest would continue to accrue beyond the date of the agreement.

While this argument was successfully applied to interest claimed before the FSA, it does not apply in this context. As Justice admits elsewhere in its opposition to the instant motion,

the FSA and the OSA are two very different contracts. While the FSA does not allow Celtic to enforce the underlying contracts upon a breach, the OSA does. In fact, in light of Justice's breach of the OSA, it is as if the OSA never existed. Therefore, interest continued to accrue on invoiced sums that were revitalized by virtue of Justice's breach. This amount includes all invoices listed in Exhibit D from February 24, 2012 on.

### 4. Interest on Cleaning/Cover Fees and Demurrage

Justice only argues that interest is not due on these sums because the sums are not payable due to Celtic's negligence. As the Court has rejected Justice's argument that it does not owe demurrage and cover/cleaning fees, this argument must also fail. Therefore, interest is owed on all invoiced demurrage and cover/cleaning fees arising under the 2012 Service Agreement, both 2012 Spot Contracts, and the FSA, through the present day.

In light of these findings, the Court will enter a judgment awarding interest on all invoiced sums arising from the FSA, the 2012 Service Agreement, both 2012 Spot Contracts, and the OSA, less the $34,263.50 in interest that was previously awarded in the March 6, 2014 partial final judgment. Interest will be awarded at the contractual rate of 1.5% and will continue to accrue until paid. Interest on any sums invoiced as a result of the 2011 Service Agreement or 2011 Spot Contract will not be awarded.

### D. Prejudgment Interest

Though Celtic did not make a similar request in its earlier

motion for entry of judgment, it now seeks prejudgment interest from December 7, 2011, the date that it first filed suit against Justice for KFC's breach of the 2011 Service Agreement and 2011 Spot Contract. Celtic contends that in maritime cases, the award of prejudgment interest is the rule rather than the exception. *Reeled Tubing, Inc. v. M/V Chad G*, 794 F.2d 1026, 1028 (5th Cir. 1986). Further, if prejudgment interest is awarded, Celtic avers that the rate should be based on Louisiana judicial interest rate, which is 4.0% per year.

Justice disputes the propriety of such an award. First, Justice argues that no such award was made in connection with the March 6, 2014 partial final judgment, thus no such award may be retroactively made on those sums. Moreover, as to the new sums awarded based on the instant motion, Justice argues that prejudgment interest cannot be awarded from the date that Celtic filed suit in 2011 when the majority of the contracts at issue were not even in existence at that time. At best, Justice avers that Celtic would be allowed prejudgment interest starting with the demurrage claim arising from the FSA, but even that is a stretch according to Justice. Rather, a proper date on which it is proper to commence calculating interest is March 26, 2013, which is the date that this Court re-opened litigation to enforce the OSA. Finally, Justice argues that the appropriate interest rate is .11%, which is the federal rate typically applied to maritime matters brought in federal court.

In maritime cases, the award of prejudgment interest is the rule rather than the exception. *Reeled Tubing, Inc.* 794 F.2d at 1028. Consequently, "[p]rejudgment [i]nterest is awarded not as a penalty or as compensation for loss of property use, but as compensation for the use of funds to which the plaintiff was ultimately judged entitled, but which the defendant had the use of prior to judgment." *Pillsbury Co. v. Midland Enterprises, Inc.*, 715 F. Supp. 738, 769 (E.D. La. 1989) *aff'd and remanded*, 904 F.2d 317 (5th Cir. 1990). Consequently, in the Fifth Circuit, such interest is generally awarded from the date of the loss. *Reeled Tubing, Inc.*, 794 F.2d at 1028. "A trial court has the discretion to deny prejudgment interest only where peculiar circumstances would make such an award inequitable." *Id.* The Fifth Circuit's definition of "peculiar circumstances" is narrow and only encompasses situations wherein "plaintiff improperly delayed resolution of the action, where a genuine dispute over a good faith claim exists in a mutual fault setting, where some equitable doctrine cautions against the award, or where the damages award was substantially less than the amount claimed by plaintiff." *Pillsbury Co.*, 715 F. Supp. at 769. Once it is determined that prejudgment interest should be awarded, "[t]he rate [of the award] is within the trial court's broad discretion. The Fifth Circuit has upheld awards at the Louisiana legal rate, at the federal legal rate, as well as at, among other rates, higher rates roughly equal to the plaintiff's actual cost of borrowing." *Id.* at 770-71.

Here, there are no peculiar circumstances present that require the Court to deviate from the general rule of awarding prejudgment interest in maritime cases. However, because Celtic did not request prejudgment interest in its prior motions, and consequently the Court did not include an award of prejudgment interest in the partial final judgment, Celtic may not go back to those amounts and demand prejudgment interest. Therefore, prejudgment interest will only be awarded on those amounts at issue in this motion, which are awards for demurrage and for cover/cleaning charges. Because these are specific sums that are owed, it is not necessary to determine the specific date on which to commence the accrual of prejudgment interest, rather the interest will apply to all demurrage and cover/cleaning charges from the date that such amounts became due. Accordingly, the Court will enter a judgment awarding prejudgment interest at a rate of 4% per year on all demurrage and cover charges owed by Justice to Celtic starting from the day that such sums became due and ending on the date that the debt is satisfied.

**E. Attorney's Fees**

Celtic demands attorney's fees that cover the fees charged in connection with this litigation, but also the fees charged in connection with the KFC litigation that was transferred to this Court from the Eastern District of Kentucky. Celtic avers that, if the Court grants the instant motion, it will submit a record of attorney's fees under seal within fourteen days following the Court's entry of judgment in accordance with Local Rule 54.2.

Alternatively, Celtic proposes that the final determination of attorney's fees be deferred pending Justice's appeal. *See Kirmer v. Goodyear Tire & Rubber Co.*, No. 11-69, 2012 WL 2564971 (E.D. La. June 7, 2012) *report and recommendation adopted*, No. 11-069, 2012 WL 2564955 (E.D. La. July 2, 2012) (where the appeal of a partial final judgment was pending, the magistrate judge recommended that a motion for attorney's fees be "dismissed without prejudice, subject to an accompanying order preserving plaintiff's claims and extending the time during which plaintiff must file his renewed motion for attorneys fees to fourteen (14) days after the entry of a final judgment addressing *all* claims asserted in this action.")

Justice argues that Celtic is not entitled to recover attorney's fees connected to the KFC litigation because the agreements relied on in this matter only permit recovery of fees related to the enforcement of the OSA. Additionally, Justice requests that any documents regarding attorney's fees submitted to the Court also be submitted to Justice for review.

Here, the Court finds that the fees that Celtic incurred defending itself in the KFC litigation are not recoverable under the terms of the contractual provisions relied on herein. The KFC litigation presents separate claims for negligence that are not related to Celtic's instant efforts to enforce the OSA. To the extent that the contracts permit recovery of attorney's fees for enforcement of the carrier's liability indemnity clause contained in several of the agreements, that clause is not relevant to the

instant proceeding to enforce the settlement agreements.[3] As to all other attorney's fees due for enforcement of the settlements, the Court will adopt Celtic's proposal to defer ruling until this matter has been fully resolved and the pending appeal and/or any future appeals have been completed.

## II. Motion to Strike Ball Affidavit

Because the Court did not rely on the affidavit of Stephen Ball in rendering this order, the motion to strike will be denied as moot.

Accordingly,

**IT IS ORDERED** that Celtic Marine, Corporation's **Motion for Summary Judgment (Rec. Doc. 152)** is **GRANTED IN PART AND DENIED IN PART**. The Court will enter a partial final judgment in this matter awarding the following: (1) demurrage and cover/cleaning fees in the requested amount of $682,554.74; (2) interest on all invoiced sums arising from the February Service Agreement, the 2012 Service Agreement, both 2012 Spot Contracts, and the October Settlement Agreement, less the $34,263.50 in interest that was previously awarded in the March 6, 2014 partial final judgment. Interest will be awarded at the contractual rate of 1.5% and will continue to accrue until paid; and (3) prejudgment interest at a rate of 4% per year on all demurrage and cover charges owed by Justice to Celtic

---

[3] The KFC and Justice litigations have not been consolidated and must retain their separate identities to prevent confusion. Therefore, to the extent that such a clause is applicable to the KFC litigation, Celtic must seek attorney's fees related to the KFC litigation in that matter itself.

starting from the day that such sums became due and ending on the date that the debt is satisfied. Seeing no just reason for delay, the Court will certify the judgment as a partial final judgment under Federal Rule of Civil Procedure 54(b).

**IT IS FURTHER ORDERED** that Celtic Marine Corporation's right to file a renewed motion for attorney's fees is extended until **fourteen (14) days following the resolution of any appeals** in this matter.

**IT IS FURTHER ORDERED** that Celtic's **Motion to Strike Memorandum in Opposition (Rec. Doc. 158)** is **DENIED AS MOOT**.

New Orleans, Louisiana, this 28th day of May, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE