# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT



U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED AUG 22 2014

WILLIAM W. BLEVINS
CLERK

United States Court of Appeals
Fifth Circuit
**FILED**
July 29, 2014

Lyle W. Cayce
Clerk

No. 13-30712

D.C. Docket No. 2:11-CV-3005

CELTIC MARINE CORPORATION,

Plaintiff - Appellee

v.

JAMES C. JUSTICE COMPANIES, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed in part and dismissed in part for lack of jurisdiction.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

ISSUED AS MANDATE: 2 0 AUG 2014

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

New Orleans, Louisiana

2 0 AUG 2014

___ Fee _____
___ Process _____
X Dktd _____
___ CtRmDep _____
___ Doc. No. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30712

United States Court of Appeals
Fifth Circuit

**FILED**

July 29, 2014

Lyle W. Cayce
Clerk

CELTIC MARINE CORPORATION,

Plaintiff–Appellee

v.

JAMES C. JUSTICE COMPANIES, INCORPORATED,

Defendant–Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Celtic Marine Corp. ("Celtic Marine") filed suit against James C. Justice Companies, Inc. ("Justice") in this maritime dispute for breach of contract. The parties reached two settlement agreements. The parties entered into the second agreement after the first was not fulfilled. After the second settlement agreement was also not timely fulfilled, Celtic Marine moved for summary judgment to enforce an acceleration clause, contained in the second settlement agreement, for all payments due under the first settlement agreement. Celtic Marine also moved under Federal Rule of Civil Procedure 60(b)(6) to reopen the case. The district court granted both motions, granted leave for Celtic Marine to amend its complaint, and later denied Justice's motion to reconsider.

We affirm summary judgment and dismiss Justice's appeal of the district court's Rule 60(b)(6) order.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The action below arises out of a maritime dispute involving Celtic Marine, Kentucky Fuel Corp. ("KFC"), and KFC's guarantor, Justice. In February 2011, KFC entered into a service agreement and spot contract with Celtic Marine (the "2011 Contract"). Therein, Celtic Marine agreed to arrange for the transportation of metallurgical coal on a number of barges. Under a Guarantor's Agreement, Justice guaranteed all obligations KFC owed to Celtic Marine under the 2011 Contract.

On December 7, 2011, Celtic Marine filed suit against Justice for breach of the Guarantor's Agreements. Celtic Marine alleged that KFC failed to fulfill its obligations under the 2011 Contract and, thus, Justice, as guarantor, was responsible for past due freight, shortfall, liquidated damages, demurrage, and other costs.

On February 1, 2012, Celtic Marine, KFC, and Justice executed a settlement agreement settling all claims (the "February Settlement Agreement"). KFC agreed to pay Celtic Marine all continuing demurrage incurred on the loaded barges until the cargo was unloaded. Justice agreed to guarantee KFC's payment of this continuing demurrage and also agreed to pay to Celtic Marine a lump sum of $4,687,215. As additionally required under the February Settlement Agreement, KFC entered into another service agreement and spot contract with Celtic Marine for the transportation of coal (the "2012 Contract"). Justice guaranteed the 2012 Contract as well.

In light of the February Settlement Agreement, the district court entered an order of dismissal "without prejudice . . . within 120 days, to seek summary judgment enforcing the compromise." Later, a dispute arose regarding KFC's compliance with the February Settlement Agreement and the 2012 Contract.

On May 24, 2012, Celtic Marine moved for an extension of time to enforce the settlement, contending that the cargo had yet to be unloaded and the demurrage charges remained unpaid. The district court granted the motion and extended the deadline to enforce the February Settlement Agreement an additional 120 days until October 4, 2012.

In October 2012, the parties announced a subsequent settlement agreement (the "October Settlement Agreement"), and the district court granted Celtic Marine's motion for an extension of time to enforce settlement and extended its dismissal order until January 12, 2013. Under the October Settlement Agreement, Justice and KFC agreed to jointly pay Celtic Marine the sum of $2,200,000.00, payable in four installments: (1) $1,925,000.00 to be paid October 5, 2012, the date of the agreement; (2) $91,666.66 to be paid by October 12, 2012; (3) $91,666.66 to be paid by November 1, 2012; and (4) $91,666.66 to be paid by December 1, 2012. In exchange, "Celtic Marine agree[d] to release Justice and KFC upon Celtic Marine's full and irrevocable receipt of the sum of [these payments] from Justice and/or KFC." Clause Three provides: "In the event that any of the installments . . . are not timely received, Celtic Marine reserves the right to seek payment in full for the total amounts owed to it by KFC and Justice under the [February Settlement Agreement and 2012 Contract] as of the date that particular late installment was due . . . and unpaid" ("Clause 3" or "the acceleration clause"). The October Settlement Agreement also incorporated both Justice's guaranty and KFC's guaranty of the "prompt payment and performance" of each other's obligations to Celtic Marine under the October Settlement Agreement.

In the months that ensued, Celtic Marine's chief executive officer Michael O'Connor ("O'Connor") and Justice's Executive Vice President James C. Justice III ("James") exchanged a series of emails concerning Justice's installment payments. There is no dispute that Justice paid all installments

to Celtic Marine, and that each payment was late. For example, Justice made the first installment payment three weeks late on October 26, 2012 and in the wrong amount of $1,000,000.

Upon receipt of the third installment, O'Connor emailed James on November, 21, 2012: "Check received with thanks. Pls [sic] confirm the last payment of 91,666.66 will be paid Dec. 3rd per agreement." Over the next several weeks, O'Connor repeatedly inquired about the status of the last payment, *inter alia*: "Jay, please confirm the payment will be completed on time"; "Still no payment 91,666.66?"; "Let's get payment completed for [overnight] check"; "Why haven't we been paid the last payment of $ 91,666.66?" James responded in the following email exchange:

| | |
|---|---|
| O'Connor:<br>January 5, 2013 | Are we being paid the $ 91,666.66 to settle this once and for all? I have lost faith in this agreement from your side. |
| O'Connor:<br>January 7, 2013 | Are you paying us the $ 91,666.66 today? |
| James:<br>January 7, 2013 | Fri |
| O'Connor:<br>January 7, 2013 | o/n check correct and can't u do it Thurs for Friday devl? |

No further emails were exchanged. The final installment payment of $91,666.66 was made that Thursday on January 10, 2013, nearly six weeks past the original due date.

On January 11, 2013, Celtic Marine moved for summary judgment to enforce the acceleration clause and demand all payments due under the February Settlement Agreement. Celtic Marine also moved under Federal Rule of Civil Procedure 60(b)(6) to reopen the case in order to enforce the settlement and to allow it to amend and supplement its claims. The district court found that Celtic Marine maintained the right to invoke the acceleration

clause and granted its motion for summary judgment. The district court also granted Celtic Marine's Rule 60(b)(6) motion in order to determine the actual amount that Justice owes Celtic Marine. Justice timely appeals both rulings.

## II.  JURISDICTION

The district court had jurisdiction over this maritime dispute pursuant to 28 U.S.C. § 1333, as well as on the basis of diversity of citizenship under 28 U.S.C. § 1332.

This Court has jurisdiction over interlocutory orders "determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."  28 U.S.C. § 1292(a)(3).  Because interlocutory appeals are disfavored, however, this Court has "tended to construe [§ 1292(a)(3)] rather narrowly."  *In re Ingram Towing Co.*, 59 F.3d 513, 516 (5th Cir. 1995).  Indeed, "[o]rders which do not determine parties' substantive rights or liabilities . . . are not appealable under section 1292(a)(3), even if those orders have important procedural consequences."  *Francis v. Forest Oil Corp.*, 798 F.2d 147, 150 (5th Cir. 1986) (citation omitted).  Rather, the order appealed must "finally determine the rights or liabilities of either party to this dispute." *In re Patton–Tully Transp. Co.*, 715 F.2d 219, 222 (5th Cir. 1983). "As a general rule, whenever an order in an admiralty case dismisses a claim for relief on the merits it is appealable under section 1292(a)(3)."  *Francis*, 798 F.2d at 149.

Here, § 1292(a)(3) grants this Court jurisdiction over Justice's interlocutory appeal of the district court's order granting summary judgment because it had "determin[ed] the rights and liabilities of the [present] parties." *See* 28 U.S.C. § 1292(a)(3); *Bank One, La. N.A. v. Dean*, 293 F.3d 830, 832 (5th Cir. 2002) ("Because the grant of summary judgment disposed of BargeCarib's case on the merits, we have jurisdiction [pursuant to § 1292(a)(3)] even without Rule 54(b) certification.").  Section 1292(a)(3) does not, however, grant this Court jurisdiction over the district court's Rule 60(b) order.  The district court

did not finally determine the rights or liabilities of either party to this dispute. Rather, as Justice concedes in its letter brief, the reopening of the case merely "allow[ed] Celtic [Marine] to pursue . . . relief." In other words, the order reopening the case was simply procedural, permitting Celtic Marine to pursue its claims, and was thus not appealable under § 1292(a)(3). *See, e.g., Patton–Tully Transp. Co.*, 715 F.2d at 222 ("While a determination that a plaintiff is not a Jones Act seaman is appealable . . . because it effectively terminates the suit, that portion of an interlocutory order determining that plaintiff is a Jones Act seaman merely allows him to pursue his claim in the hope of obtaining a final judgment against defendant.").

Accordingly, we dismiss for want of jurisdiction Justice's appeal of the Rule 60(b)(6) order, and only address its appeal of summary judgment.

## III. STANDARD OF REVIEW

This Court reviews the district court's ruling on summary judgment de novo, applying the same standard as the district court in the first instance. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the "'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial,

the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case. *Id.* at 325. The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The Court must "draw all reasonable inferences in favor of the nonmoving party" and "refrain from making credibility determinations or weighing the evidence." *Turner*, 476 F.3d at 343 (citation and internal quotation marks omitted). A party cannot "defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

## IV. DISCUSSION

Justice contends that the district court erred when it granted summary judgment. In support, Justice argues that the parties amended the installment payment deadlines such that its payments were not late. In the alternative, Justice argues that Celtic Marine waived its right to enforce Clause 3. We reject each argument in turn below.

### A. Amendment of the October Settlement Agreement

The email exchange between O'Connor and James did not amend the October Settlement Agreement. Under Louisiana law,[1] "[a] settlement agreement is a contract" and "[t]he rules of construction applicable to contracts are therefore used." *Doré Energy Corp. v. Prospective Inv. & Trading Co.*, 570 F.3d 219, 225 (5th Cir. 2009) (citing *Trahan v. Coca Cola Bottling Co. United, Inc.*, 2004-0100, p. 14 (La. 3/2/05); 894 So. 2d 1096, 1106; *see* La. Civ. Code Ann.

---

[1] The October Settlement Agreement provides that it "shall be governed, construed, and enforced under the laws of the State of Louisiana."

art. 3071). "A compromise shall be made in writing . . . ." La. Civ. Code Ann. art. 3072. Under the Louisiana Uniform Electronic Transactions Act ("LUETA"), La. Rev. Stat. Ann. §§ 9:2601–2620, a "writing" may include electronic communications and electronic signatures. LUETA "applies only to transactions between parties, each of which has agreed to conduct transactions by electronic means." *Id.* § 9:2605(B)(1); *see also id.* § 9:2608(A)(1); *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 469–70 (5th Cir. 2006). In this regard, "[t]he context and surrounding circumstances, including the conduct of the parties, shall determine whether the parties have agreed to conduct a transaction by electronic means." La. Rev. Stat. Ann. § 9:2605(B)(2). Additionally, "[t]here must be a showing that the signer intended to do a legally significant act." *Regions Bank v. Cabinet Works, L.L.C.*, 11-748 p. 15 (La. App. 5 Cir. 4/10/12); 92 So. 3d 945, 956. If LUETA applies, then "[e]-mail can fulfill the requirement of [article 3072] as a writing." *Id.*

Justice argues that the parties' email exchange leading up to its January 10, 2013 payment creates a genuine dispute of material fact whether the parties intended to amend the payment deadlines of the October Settlement Agreement. In support, Justice primarily focuses on O'Connor's request for the final payment "to settle this for once and all." Justice also offers the affidavit of its Executive Vice President, James, who participated in the email exchange. In his affidavit, James claims that the parties intended to amend the payment date. Justice contends that the affidavit of Celtic Marine's chief financial officer, Robert Bayham ("Bayham"), does not constitute competent summary judgment evidence because it was self-serving and lacked personal knowledge. Bayham, Justice continues, "was not a party to, or even privy to, the relevant e-mail exchanges, and . . . had no personal knowledge of them or of the intent of Mr. Justice and Mr. O'Connor in the exchanges"; essentially,

Celtic Marine "presented no factual basis for the affiant's competency to attest to the contents of the e-mail exchanges or to the intent of the participant drafters."

Celtic Marine responds that it never agreed to modify or amend any terms of the October Settlement Agreement by electronic means. Bayham attested that "[a]t no time has Celtic Marine ever agreed to modify or amend any terms or portions of the February Settlement Agreement or October Settlement Agreement through an email communication." Regarding Bayham's competency, Celtic Marine argues that the statements within Bayham's affidavit demonstrate his personal knowledge of "the details of the agreements between the parties, the course of conduct between the parties, and the amounts which Justice owes." Celtic Marine further notes that all contracts and agreements between the parties—the two settlement agreements, all contracts, and all guaranties—were typed agreements physically signed by authorized representatives of the parties. Conversely, according to Celtic Marine, "[e]mails have never amended the settlement agreements between the parties," and there is no evidence that "Celtic Marine 'intended to do a legally significant act' by sending repeated emails insisting upon payment of the installments owed by Justice.'"

Celtic Marine is correct; there is no evidence that the parties agreed to amend the settlement agreement, electronically or otherwise. Justice focuses only on the email exchange but neglects to establish, as it must, that the parties ever agreed to conduct transactions by electronic means. *See, e.g.*, La. Rev. Stat. Ann. § 9:2605(B)(1) (providing that LUETA applies only where each party "has agreed to conduct transactions by electronic means"). In contrast, Celtic Marine notes, and Justice does not dispute, that the two settlement agreements and all contracts and guaranties between the parties had been typed and physically signed by authorized representatives of the parties.

Moreover, Bayham attested that Celtic Marine had never agreed to modify or amend either settlement agreement by email communication. His personal knowledge of the email exchange is not an issue—Justice does not dispute his competence to attest to the parties' dealing outside of that email exchange, including whether the parties had ever agreed that email communications may amend or modify the agreements. There is no evidence that, prior to the email exchange at issue here, the parties agreed to conduct a transaction by email.

As to the email exchange itself, its plain language establishes that the parties did not intend to amend the October Settlement Agreement. *See Clovelly Oil Co., LLC v. Midstates Petrol. Co., LLC*, 2012-2055, p. 5 (La. 3/19/13); 112 So. 3d 187, 192 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." (citation and internal quotation marks omitted)). Justice harps upon the email in which O'Connor asked "[a]re we being paid the $ 91,666.66 to settle this for once and all?" Justice contends that because the email asked for payment "to settle this for once and all" and James later responded "Fri[day]," the parties thereby amended the October Settlement Agreement such that the final payment, though tardy, would entitle Justice to "a full and irrevocable release."

In the context of the email exchange as a whole, however, O'Connor's request for payment "to settle this for once and all" was simply *one* of Celtic Marine's *fifteen* demands for Justice's final installment payment. Celtic Marine repeatedly asked, for example, "R u [sic] paying us or not?"; "[Last] payment past due per settlement terms and why?"; "Still no payment 91,666.66?". The one-sided nature of Celtic Marine's repeated demands for payment—in contrast to Justice's infrequent and sparse responses—speaks volumes. In fact, the email exchange demonstrates that James never responded to O'Connor's "to settle this for once and all" email, much less

accepted the alleged amendment proposal. Rather, James only responded once O'Connor asked, "[a]re you paying us the $ 91,666.66 today?" To which James answered, "Fri." Overall, a common-sense reading of the parties' email exchange shows no evidence of an intent to amend the October Settlement Agreement. *See Clovelly Oil Co.*, 2012-2055 at p. 6; 112 So. 3d at 192 ("[A] contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." (citation and internal quotation marks omitted)). There is no genuine dispute that the email exchange did not amend the October Settlement Agreement.

## B. Waiver of the Acceleration Clause

Celtic Marine did not waive its ability to enforce the acceleration clause. In Louisiana, under *Standard Brewing Co. v. Anderson*, 46 So. 926 (La. 1908):

> There is a well[-]established rule . . . that where payments are due in installments, if the payee customarily permits payments to be made after the day on which they are due, [then] there is thereby established a course of conduct from which it is proper to say that the payee by acquiescence therein has waived the right to demand that the acceleration or any similar clause be enforced.

*Rex Credit Co. v. Kirsch*, 4 So. 2d 797, 798 (La. Ct. App. 1941) (citations omitted). "The purpose for the rule is to prevent an obligee from lulling an obligor into a false sense of security by accepting late payments over an extended period. Fairness requires that the obligee make known his intent to discontinue acceptance of late payments." *Nolan J. Cunningham Apartments, Inc. v. Dupre*, 428 So. 2d 1046, 1047 (La. Ct. App. 1983) (citing *Standard Brewing Co.*, 46 So. 926; *Sternberg v. Mason*, 339 So. 2d 373 (La. Ct. App. 1976)).

This well-established rule, however, applies only if the obligor is ready to pay but delayed only because of the impression, created by the obligee, that a late payment is acceptable. As the Louisiana Supreme Court summarized:

> It is perfectly evident from the evidence as a whole that plaintiff never expressly or otherwise waived his right to be paid his rent promptly; and that, if prompt payment was not exacted, it was because of an unwilling and forced indulgence on his part.
>
> To such a situation the doctrine of the case of *Standard Brewing Co. v. Anderson* is totally inapplicable. That doctrine can obtain only where the tenant is ready to pay the rent promptly and needs no indulgence, but delays in paying simply because he is under the impression, produced by the lessor's past conduct, that it is a matter of no moment whether the payments be made promptly or a few days late.

*Briede v. Babst*, 59 So. 106, 107 (La. 1912) (citation omitted).

Justice argues that Celtic Marine waived the right to enforce the acceleration clause because Celtic Marine established a course of conduct wherein it accepted late payments without seeking to enforce the acceleration clause. By doing so, according to Justice, Celtic Marine lulled Justice into a false sense of security, only to seek additional money after Justice had made all payments. Celtic Marine purportedly bolstered this false sense of security when it asked for the final payment to "settle this for once and all."

Celtic Marine responds that waiver does not apply because it did not acquiesce in Justice's late payments, but "did all that it could to force Justice to make each payment timely." In other words, in Celtic Marine's view, its "repeated requests" for payment "amount to nothing more than an unwilling or forced indulgence." *See Rex Credit*, 4 So. 2d at 800; *Sternberg v. Mason*, 339 So. 2d 373, 376 (La. App. 1 Cir. 1976).

*Briede* resolves the parties' dispute here. Justice does not attempt to offer any evidence that it was "ready to pay the [installment] promptly and need[ed] no indulgence" such that the *Standard Brewing* doctrine may obtain under *Briede*. *See Briede*, 59 So. at 107. On the contrary, James stated in the email exchange that, in regards to paying Celtic Marine, Justice was "scraping the money together" and that "[t]hings are really tough."

Moreover, there is no evidence that it was a "matter of no moment [to Celtic Marine] whether the payments be made promptly or a few days late." *See Briede*, 59 So. at 107. In regard to Justice's late payments, O'Connor responded to James that it was "the same for us very tough" and that Celtic Marine "cannot continue to [receive] vague answers." O'Connor also incessantly asked for payment, noting that the late payments presented a "terrible situation" and that he "lost faith in this agreement from [Justice's] side." In response, Justice relies only on the fact that Celtic Marine accepted its late payments. Amidst numerous emails demanding payment, Justice again narrowly focuses on just one—requesting payment "to settle this for once and all"—but does not offer any other evidence that Celtic Marine's acceptance of the late payments was not "because of an unwilling and forced indulgence." At best, this single email amounts to a mere "scintilla of evidence" that cannot defeat summary judgment. *Turner*, 476 F.3d at 343. Accordingly, Justice has not identified a genuine dispute of material fact whether there was a course of conduct establishing a waiver of Celtic Marine's right to exercise the acceleration clause.

In sum, the parties did not amend the October Settlement Agreement, and Celtic Marine did not waive its right to exercise the acceleration clause. The district court did not err in granting summary judgment.

## V. CONCLUSION

Justice's appeal of the district court's order on the Rule 60(b)(6) motion is DISMISSED for want of jurisdiction, and the district court's order granting Celtic Marine's summary judgment motion is AFFIRMED.